30993. GULF LIFE INSURANCE COMPANY *v.* BLOODWORTH.

DECIDED OCTOBER 24, 1945.

104

*Carlisle & Bootle, J. F. Kemp, J. D. Tindall,* for plaintiff in error.

*George B. Culpepper Jr.,* contra.

FELTON, J. ■ Under the provisions of the Code, § 56-904, an application for insurance which is not attached to or contained in the policy of insurance issued thereunder cannot be considered as a part of the policy or as an *independent contract* in any controversy between the parties interested in the policy. The policy here provides that the insured *agreed* "that no agent of the Company or other person has any authority to waive or dispense with full, true, and complete answers hereon to any of the questions herein set forth, whether such questions relate to matters already

known to said agent or not." The insertion of such an agreement is not effective as *notice* to the insured of limitations on the authority of an agent, inasmuch as the application is not attached to the policy. To allow this agreement contained in the application to serve as notice to the insured, would have the effect of circumventing the provision of the Code section cited. That section does not limit the expression "independent contract." There is no notice otherwise, in the application, relating to a limitation on the agent's authority; and, under the law applicable, when an insurance agent makes out an application for insurance, under such facts, and himself inserts the answers, he is held to do so as the agent of the insurer and not of the insured; and, under the circumstances of this case, the insured and the beneficiary are not estopped to assert that the answers were incorrectly inserted, even if the insured did not read the application and could have known of the falsity of the answers if she had done so, and even if the application stated that the insured had read it. *Clubb* v. *American Accident Co. of Louisville, Ky.*, 97 *Ga.* 502 (25 S. E. 333), and *National Accident & Health Insurance Co.* v. *Davis*, 179 *Ga.* 595 (176 S. E. 387). The evidence did not demand a verdict for the insurance company on the question as to whether the policy was fraudulently procured.

■ The evidence did not demand a finding that the insured was not in sound health when the policy was delivered. Sound health means "such health and strength as to justify the reasonable belief that [the insured] is free from derangement of organic functions, or free from symptoms calculated to cause reasonable apprehension of such derangement, and [that] to ordinary observation and to outward appearance her health is reasonably such that she may with ordinary safety be insured and upon ordinary terms." *National Life & Accident Insurance Co.* v. *Martin*, 35 *Ga. App.* 1 (132 S. E. 120), and cases cited. The facts shown by the proofs of death do not exclude the hypothesis that heavy drinking materially contributed to the death, and that in its absence the insured might not have lived to a reasonable expectancy. There was no expert testimony on the subject, and this court has only meager data on which to base a conclusion.

■ It was not error requiring the grant of a new trial for the court to admit in evidence over objection the testimony of a wit-

ness to the effect that the agent stated after the death of the insured that the policy was in full force. The issues in the case were whether the policy was procured by. fraud or whether the agent knew the true facts about the insured's condition and his-. tory. The court submitted these clear-cut issues, and no others, to the jury, and we cannot see how the testimony in question could have been harmful to the insurer.

■ It was not error, for the reason assigned, to admit testimony that the agent knew that the insured had suffered from a former illness. The objection was that the application and the policy contained limitations on the authority of the agent. These grounds are without merit because, as stated in division 1, the application contained an agreement by the insured that the agent's authority was limited; and, under the Code section cited, such an agreement in an unattached application is not binding on the insured or the beneficiary, and the limitation contained in the policy refers to a time after the delivery of the policy. *Metropolitan Life Insurance Co.* v. *Hale,* 177 *Ga.* 632 (170 S. E. 875), and cit.

■ The court charged the jury: "The defendant contends that she is bound by whatever paper she signed, and ordinarily that would be true, but if she did not understand the questions asked in the application, and if she didn't knowingly misrepresent to them, and if the agent of the company, Mr. Parker knew, had actual notice that she had been confined in the sanitarium at Milledgeville, why that would not be a defense for the insurance company, because in order for her to mislead the company she would have to knowingly prevaricate in answering those questions, wilfully answer them incorrectly." The exception to the charge is that it nullified the provision in the application and policy relating to the limitation on the agent's authority. This exception is without merit for the reasons assigned in divisions 1 and 4.

■ The preceding ruling applies to the same exception to the following charge: "The plaintiff contends, that is Mr. Bloodworth, that his wife did not wilfully and knowingly misrepresent anything, that she couldn't read on account of the fine print of the questions in the application, that she was afforded no opportunity of reading the questions in the application, that the agent of the company, Mr. Parker, wrote out the answers without ask-

ing her the questions or getting any reply to any of the questions from her, but he wrote 'No' in answer to each one of those questions propounded to her in the application. Now if that be true, that she didn't know and could not on account of eyesight, education, or for any other honest reason couldn't know what was in the application and did not know the answers as written out by Mr. Parker, the agent of the insurance company, why that would not be a wilful prevarication, and if Parker, the agent of the company, had been informed then and there that the wife had been twice in the asylum, if that notice was brought home to him, it was brought home to the insurance company, because whatever their agent knew under those circumstances the law says the insurance company knew."

■ The same rulings also apply to the exceptions to the following charge: "The plaintiff, Mr. Bloodworth, the beneficiary in the policy, contends that he did advise Mr. Parker, the agent of the company, of those facts. So you consider the evidence on that situation and see whether or not the agent of the company knew about her confinement and commitment to the asylum at Milledgeville. If he did, then the company is bound by his knowledge, if that knowledge was actual. On the other hand, if he did not know anything about that, if the company's contention on that score is the truth of the case, then the company would not be bound by the policy and you should find for the defendant."

■ The following charge is excepted to: "If on the other hand the agent did have actual knowledge of the commitment to the asylum in Milledgeville, then this company is bound and you would find a verdict in favor of the plaintiff for the amount of the insurance $536, with interest from the time of her death." The grounds of exception are the same as those already dealt with, and the additional ground that the instruction eliminated from the jury's consideration all the other issues in the case. The last exception is without merit, because, immediately following the above excerpt, the court told the jury that there were numbers of other questions on the application, and that the rules he had given them about the company's being bound by the knowledge of the agent under certain conditions would be applicable to every one of those questions.

■ The ruling in division 5 applies to the exception to the

two following excerpts, ·the exception being the same: "Well, that is the issue; the main issue in this case between the plaintiff and the defendant is whether the agent had actual notice of insanity or the untruthfulness of any of the other answers to the questions. If the agent had that actual notice,. his knowledge would be the knowledge of the company." And: "The plaintiff contends, if there is any fraud in this transaction, it is committed by the agent of the company, and that he had actual knowledge of the true situation, that he wrote the answer, that he did not read them to Mrs. Bloodworth, and she didn't ·know anything about it, and in her condition o'n account of illiteracy or sight or any other reason, for some reason she couldn't read or understand the meaning of that application, it was never submitted to her, she was never given any opportunity to read it. On the other hand, the defendant contends that she had every opportunity to know what was in the application, that each question was read to her separately and she answered each question 'No,' and Mr. Parker, the insurance agent representing the company, truthfully put down her answers on the application just as she had · given them to him."

The court did not err in overruling the motion for a new trial.

*Judgment affirmed. Sutton, P. J., and Parker, J'., concur.*